DISCIPLINARY COUNSEL *v.* BENNETT.

[Cite as *Disciplinary Counsel v. Bennett*, **124 Ohio St.3d 314, 2010-Ohio-313.**]

*Attorney misconduct, including engaging in conduct involving dishonesty, fraud, or deceit — Indefinite suspension, with credit for time served under felony-conviction interim suspension.*

(No. 2009-1100 — Submitted August 11, 2009 — Decided February 4, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-037.

_____

**Per Curiam**.

{¶ 1} Respondent, Clyde Bennett II, formerly of Mason, Ohio, Attorney Registration No. 0059910, was admitted to the practice of law in Ohio in 1992. On February 15, 2008, we suspended respondent's license to practice on an interim basis pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. See *In re Bennett*, 117 Ohio St.3d 1401, 2008-Ohio-594, 881 N.E.2d 270.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent from practice for one year and give him credit for the time his license has been under the interim suspension. The board made this recommendation based on findings that respondent had structured financial transactions to avoid federal reporting requirements for transfers in excess of $10,000, the illegal conduct that led to his conviction. We agree that respondent violated ethical standards incumbent upon Ohio attorneys but hold that an indefinite suspension, with credit for the interim suspension, is the appropriate sanction.

**{¶ 3}** Relator, Disciplinary Counsel, charged respondent with violating two Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The parties waived an evidentiary hearing and filed agreed stipulations in which respondent admitted the cited misconduct and the parties proposed that he receive a one-year suspension with credit for the time served since his February 15, 2008 interim suspension. A panel of three board members recommended acceptance of the agreed stipulations and proposed sanction. The board adopted the panel's report, accepting the stipulations and recommendation.

**Misconduct**

**{¶ 4}** The parties stipulated to respondent's violations of DR 1-102(A)(4) and (6), and to the following underlying facts:

**{¶ 5}** 1. "On September 26, 2007, respondent pled guilty to a one-count Bill of Information alleging a Class C Felony in violation of 31 USC §5342(a)(3) and (d)(2) [sic, 5324(a)(3) and (d)(2)] and 18 USC §2 for unlawfully structuring financial transactions, Case No. 3:07CR144."

**{¶ 6}** 2. "On December 28, 2007, U.S. District Court Judge Thomas Rose sentenced respondent to 24 months in prison and a $4,000 fine."

**{¶ 7}** 3. "Under 31 USC §5313, certain federal regulations, namely 31 CFR §§ 103.11 and 103.22, required domestic financial institutions to prepare and file FINCEN Form 104 whenever they were involved in the payment, receipt, or transfer of U.S. Currency exceeding $10,000."

**{¶ 8}** 4. "At all times herein, respondent was aware of such regulations."

**{¶ 9}** 5. "Structuring occurs when a person conducts one or more currency transactions at one or more financial institutions (or different branches of the same financial institution), on one or more days. One does this with the

purpose of evading currency transaction reporting requirements. Structuring includes breaking down a single sum of currency over $10,000 into smaller sums or conducting a series of case [sic] transactions all at or below $10,000 with the purpose of evading currency transaction reporting requirements."

{¶ 10} 6. "During a five-month period, respondent unlawfully structured approximately $124,300 with various financial institutions located around Cincinnati, Ohio for the express purpose of evading the above-mentioned reporting requirements."

{¶ 11} 7. "A majority of $124,300 was currency respondent had obtained from previously cashed paychecks that were issued to respondent by his employer * * *."

{¶ 12} 8. "A certain unspecified portion of the currency transactions identified below originated from income that respondent received, but improperly failed to report and account to the Internal Revenue Service. The following paragraphs illustrate respondent's criminal activity."

{¶ 13} 9. "On August 15 and 16, 2002, respondent unlawfully structured $18,000 in U.S. Currency by making the following deposits:

"• $4,000 at Fifth Third Bank, 916 Main St., Cincinnati

"• $5,000 at Fifth Third Bank, 201 E. Fourth St., Cincinnati

"• $3,000 at Fifth Third Bank 38 Fountain Square, Cincinnati

"• $6,000 at Fifth Third Bank, 916 Main St., Cincinnati."

{¶ 14} 10. "Between September 11, 2002 and September 13, 2002, respondent unlawfully structured $29,300 in U.S. Currency by making the following deposits:

"• $7,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $8,000 at Fifth Third Bank, 916 Main St., Cincinnati

"• $5,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $3,000 at Fifth Third Bank, 5th & Broadway, Cincinnati

"• $6,300 at Fifth Third Bank, 201 E. Fourth St., Cincinnati."

**{¶ 15}** 11. "Between September 18, 2002 and September 20, 2002, respondent unlawfully structured $20,000 in U.S. Currency by making the following deposits:

"• $5,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $8,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $7,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati."

**{¶ 16}** 12. "Between September 23, 2002 and September 27, 2002, the respondent unlawfully structured $32,000 in U.S. Currency by making the following deposits:[1] [Footnote sic.]

"• $8,000 at Fifth Third Bank, 916 Main St., Cincinnati

"• $7,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $3,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $4,000 at Fifth Third Bank, 5th & Broadway, Cincinnati

"• $4,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $6,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati."

**{¶ 17}** 13. "Between September 28, 2002 and October 1, 2002, respondent unlawfully structured $12,000 in U.S. Currency by making the following deposits:

"• $2,500 at Fifth Third Bank, 1212 West Kemper, Cincinnati

"• $6,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

"• $3,500 at Fifth Third Bank, 201 E. Fourth St., Cincinnati."

**{¶ 18}** 14. "On January 14 and 15, 2003, respondent unlawfully structured $13,000 in U.S. Currency by making the following deposits:

"• $9,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati

---

1. "Respondent pled guilty to unlawfully structuring transactions between September 23, 2002 and September 27, 2002. The remainder of the transactions were not included in the Bill of Information."

"• $4,000 at Fifth Third Bank, 38 Fountain Square, Cincinnati."

{¶ 19} 15. "As part of the plea agreement, respondent agreed, that if necessary, he would file corrected U.S. Federal Income Tax returns for 2003 and 2004 within 120 days of the plea."

{¶ 20} 16. "For the year 2003 and 2004, respondent and his wife filed joint tax returns and paid $75,540 and $76,153 in federal income taxes respectively."

{¶ 21} 17. "To date, neither the IRS nor the U.S. Department of Probation has advised respondent of the need to amend his 2003 and 2004 taxes."

{¶ 22} We accept these stipulations and find that respondent violated DR 1-102(A)(4) and (6).

### Sanction

{¶ 23} In determining the appropriate sanction for a lawyer's misconduct, we consider sanctions imposed in similar cases and whether aggravating or mitigating factors under BCGD Proc.Reg. 10(B) weigh in favor of a harsher or more lenient disposition. Citing no aggravating features, the parties stipulated to the mitigating factors that respondent (1) does not have a prior disciplinary record, (2) provided full and free disclosure to the board with a cooperative attitude toward the proceedings, and (3) offered positive character evidence. See BCGD Proc.Reg. 10(B)(2)(a), (d), and (e).

{¶ 24} The parties have also stipulated in mitigation that other penalties and sanctions have been imposed for respondent's illegal conduct — he was sentenced to two years in prison and ordered to pay a $4,000 fine. See BCGD Proc.Reg. 10(B)(2)(f). Although this is true, the punishment was for only a portion of the violations committed. As part of a plea agreement with prosecutors, respondent pleaded guilty to structuring $32,000 in transactions from September 23 through 27, 2002, but he admits in the stipulations in this case that

he structured other transactions as well. This reduces the weight of that mitigating factor.

{¶ 25} We also find a number of aggravating factors applicable to this case that the parties, panel, and board do not mention. First, although respondent's motive for illegally structuring financial transactions is not clear from the record before us, the bill of information to which he pleaded guilty stated that he structured the $32,000 transaction by making each deposit "into another individual's savings account." Respondent apparently thought it was worth the risk of prosecution for evading the reporting requirements for domestic financial institutions. His criminal conduct thus manifests dishonest and selfish motives, aggravating factors under BCGD Proc.Reg. 10(B)(1)(b). Respondent also engaged in his illegal activity over a five-month period, making 23 separate deposits at various banks, which constitutes a pattern of misconduct, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(c). An indefinite suspension is therefore appropriate.

{¶ 26} We accept the parties' proposal to credit respondent for his interim felony suspension. In their stipulations, the parties list the following cases in which lawyers who were convicted of felonies were given credit for the time their licenses were under interim suspensions:

{¶ 27} "In *Disciplinary Counsel v. Blaszak,* 104 Ohio St.3d. 330, 819 N.E.2d 689, 2004-Ohio-6593, the Supreme Court of Ohio imposed a two-year suspension with credit for time served after the respondent pled guilty to selling witness testimony in a pending case. In *Cuyahoga County Bar Assn. v. Garfield,* 109 Ohio St.3d 103, 846 N.E.2d 45, 2006-Ohio-1935, the Ohio Supreme Court imposed an 18-month suspension with credit for time served after finding that the respondent pled guilty to one count of bank fraud for pledging a company's certificate of deposit as collateral for a personal loan. Id. In *Disciplinary Counsel v. Petroff,* 85 Ohio St.3d 396, 709 N.E.2d 111, 1999-Ohio-400, the Ohio Supreme

Court suspended Mark Petroff for one year with credit for time served after the respondent pled guilty to attempting to evade federal income taxes.  Id.  After Attorney William Seall was sentenced to four months in prison and a $7,000 fine for conspiring to commit tax fraud, the Supreme Court of Ohio suspended Seall for one year with credit for time served under the interim suspension. *Dayton Bar Assn. v. Seall,* 81 Ohio St.3d 280, 690 N.E.2d 1271, 1998-Ohio-630."

**{¶ 28}** Respondent is therefore indefinitely suspended from the practice of law in Ohio; however, we grant credit for the time he has served under the February 15, 2008 interim suspension order, *In re Bennett*, 117 Ohio St.3d 1401, 2008-Ohio-594, 881 N.E.2d 270, toward the two-year period that respondent must wait before petitioning for reinstatement under Gov.Bar R. V(10)(B).  Respondent may petition for reinstatement upon completion of respondent's supervised release.  Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents and would impose the one-year suspension recommended by the board.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caliguri, Assistant Disciplinary Counsel, for relator.

Clyde Bennett II, pro se.

_____