DISCIPLINARY COUNSEL *v.* LAND.

[Cite as *Disciplinary Counsel v. Land,* 138 Ohio St.3d 357, 2014-Ohio-1162.]

*Attorney misconduct, including creating fraudulent documents and submitting them to the IRS and being convicted of a felony for corruptly endeavoring to obstruct the due administration of the IRS—Indefinite suspension.*

(No. 2013-0940—Submitted August 21, 2013—Decided March 27, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-084.

_____

**Per Curiam**.

{¶ 1} Respondent, Suzanne Prieur Land of Hebron, Kentucky, Attorney Registration No. 0046878, was admitted to practice law in Ohio in 1990. In September 2012, we imposed an interim felony suspension on Land's license pursuant to Gov.Bar R. V(5)(A)(3) after receiving a certified copy of the judgment entry of her conviction. *In re Land*, 132 Ohio St.3d 1519, 2012-Ohio-4042, 974 N.E.2d 115.

{¶ 2} In a four-count complaint filed in November 2012, relator, disciplinary counsel, alleged that Land had violated the Rules of Professional Conduct by creating fraudulent documents in relation to estate-planning matters for three clients and by being convicted of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Service ("IRS"). She was sentenced by the federal court to five years of probation, including three years of home detention, but the probationary period may be reduced or extended by the federal government.

{¶ 3} In April 2013, the parties submitted stipulations of fact and misconduct and of aggravating and mitigating factors. They also submitted many

joint exhibits, including numerous character letters from supporters. A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing on May 1, 2013, at which Land testified. The panel also heard testimony from two character witnesses and a licensed social worker from the Ohio Lawyers Assistance Program ("OLAP") who had done an assessment of Land. The panel also received a transcript of the testimony of Land's treating therapist.

**{¶ 4}** At the conclusion of the hearing on the matter, the parties jointly recommended that Land's license to practice law be suspended indefinitely and that Land not be able to petition for reinstatement to the practice of law until she completes her federal sentence. Additionally, the parties jointly recommended that Land be required to complete her contract with OLAP and continue treatment with a therapist until the therapist determines that treatment is no longer needed. The panel adopted the parties' stipulated facts and conclusions regarding violations of the Rules of Professional Conduct and agreed with the jointly recommended sanction of the parties. The board agreed with the panel's findings, conclusions, and recommendation.

### Misconduct

**{¶ 5}** For most of her career, Land worked for large law firms and provided estate-planning advice to wealthy clients. As explained in detail below, in two separate incidents in early 2010, Land created fraudulent documents and submitted them to the IRS in an attempt to cover mistakes she had made in drafting estate-planning documents. And in another case, also in early 2010, she created a fraudulent e-mail to bolster her credibility with regard to advice she had given the administrator of an estate. Land testified at the hearing that her conduct was precipitated by her concern that her clients would lose tax benefits, that she would suffer repercussions professionally if the clients lost those benefits, and that she would be embarrassed if others knew of her drafting mistakes.

**{¶ 6}** At the time of the misconduct, Land was abusing alcohol and self-medicating with a prescription antianxiety drug she acquired over the Internet to help her deal with anxiety, depression, and the stresses of work. A few months prior to the misconduct, Land had an automobile accident and was arrested and charged with driving under the influence. She contested that charge, but lost at trial in January 2010.

*Hassman Estate*

**{¶ 7}** Land drafted some estate-planning documents for James Hassman, who later died. At the time of his death, Hassman owned a condominium in Florida with a mortgage of approximately $800,000. Hassman also had personally guaranteed lines of credit for two businesses through First Financial Bank. His estate was administered in Florida, and his daughter, Jill Yates, served as his personal representative. Land served as the primary contact for Yates but did not sign pleadings filed in court or appear in court. Another attorney in her firm was the attorney of record. Land offered advice and prepared pleadings and documents for the estate, including the IRS tax return.

**{¶ 8}** Yates paid the balance of the condominium mortgage with estate funds. To have sufficient funds in the estate to pay off the mortgage, Yates transferred funds from a limited-liability company into the estate. After paying off the mortgage, Yates did not have sufficient funds to satisfy the personally guaranteed debts to First Financial Bank, prompting the bank to sue Hassman's estate. The estate then filed a third-party complaint against Land and the law firm in which she was a partner, alleging that Land had committed malpractice either by directly advising Yates to transfer money from the limited-liability company to the estate and pay off the mortgage or by not advising against it.

**{¶ 9}** Land claimed in her testimony at the hearing before the panel that she had advised Yates not to pay off the mortgage until all the estate's debts were known. She also testified that because her professional skills were being

challenged and she was feeling pressure from her firm, she turned to greater alcohol consumption and self-medicating with the antianxiety drug she acquired over the Internet and went into a self-described downward spiral.

{¶ 10} Ultimately, thinking that her word against a client's was not good enough, Land fabricated an e-mail that contained the essence of the advice she had given Yates and made it look as if it had been sent to the client almost two years earlier. In the course of the malpractice litigation, the plaintiffs hired a document examiner to review the e-mail, and he concluded that the document was fraudulent. Land eventually admitted to the fraud.

{¶ 11} The parties stipulated, and the panel and board concluded, that this conduct, which forms the basis of Count Four of the complaint, violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 12} We adopt these findings and agree with these conclusions.

*Lienhart Estate*

{¶ 13} In 2003, as part of an estate plan for Frank Lienhart, Land created a limited-liability company and drafted an operating agreement for the company. The purpose of the operating agreement was to put restrictions on the transfer and control of the company so that the valuation of the assets of the company would be discounted, resulting in lower taxes owed by the estate. Lienhart later died, and in representing his estate, Land filed a federal tax return, reflecting the lower value of the assets.

{¶ 14} The tax break hinged on language in the operating agreement. The IRS denied the tax benefit because it found that the language in the operating

4

agreement was deficient. The drafting error cost the estate a tax benefit of approximately $200,000.

{¶ 15} After the IRS denied the tax benefit, Land, in early 2010, attempted to defraud the IRS by creating an "amendment" to the operating agreement that cured the deficient language. She dated the document prior to Lienhart's death and copied his and his son's signatures onto the document from another document. Land also signed and submitted an affidavit to authenticate the copy of the amendment she had provided. The IRS continued to deny the tax break, and eventually, Land admitted that she had fabricated the amendment.

{¶ 16} The parties stipulated, and the panel and board concluded, that this conduct, which forms the basis of Count Two of the complaint, violated Prof.Cond.R. 8.4(c), 8.4(d), and 8.4(h).

{¶ 17} We adopt these findings and agree with these conclusions.

*Schloss Estate*

{¶ 18} Land created a limited-liability company as part of an estate plan for Milton Schloss. She also drafted an operating agreement for the company to achieve the same tax benefit attempted in the estate plan for Lienhart. The operating agreement was executed by Schloss and his sons in 2003. Following Schloss's death in 2007, Land prepared and submitted the federal tax return to the IRS. This return reflected a decreased value of the company's assets due to alleged restrictions on the assets pursuant to the operating agreement.

{¶ 19} Again, the IRS questioned the tax break, and again, in early 2010, Land provided the IRS with a copy of an amendment to the operating agreement that had purportedly been executed before Schloss's death. To support the authenticity of the fraudulent amendment, Land also provided the IRS with several additional fraudulent documents, including a letter to the client and a business appraiser. She also submitted an affidavit attesting to the amendment's authenticity. In 2011, Land admitted that she had fabricated the amendment and

the documents that she had sent to the IRS to prove the amendment's authenticity and that her affidavit contained false and misleading information. The drafting error cost the estate a tax benefit of $600,000 to $700,000.

{¶ 20} The parties stipulated, and the panel and board concluded, that this conduct, which forms the basis of Count Three of the complaint, violated Prof.Cond.R. 4.1(a) (prohibiting a lawyer from, in the course of representing a client, knowingly making a false statement of material fact or law to a third person), 8.4(c), 8.4(d), and 8.4(h).

{¶ 21} We adopt these findings and agree with these conclusions.

*Felony Conviction*

{¶ 22} In March 2012, based on the facts as noted above, Land pled guilty to a federal information charging her with corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Code, in violation of 26 U.S.C. 7212(a). In August 2012, she was sentenced to five years of probation, including three years of home detention, and was ordered to abstain from alcohol use, to continue to receive mental-health treatment as deemed necessary by her probation officer, and to pay criminal monetary penalties of $75,000 and an assessment of $100.

{¶ 23} The parties stipulated, and the panel and board concluded, that by being convicted of a felony, which forms the basis of Count One of the complaint, Land violated Prof.Cond.R. 8.4(b) and 8.4(h).

{¶ 24} We adopt these findings and agree with these conclusions.

**Sanction**

{¶ 25} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16;

*Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

*Aggravating and Mitigating Factors*

**{¶ 26}** The parties stipulated, and the panel and board found, that several aggravating factors are present: Land acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(b) through (d). The panel and board found the following mitigating factors: absence of a prior disciplinary record, full and free disclosure and a cooperative attitude toward the proceedings, imposition of other penalties or sanctions, chemical dependency or mental disability—as established through the testimony of a qualified health-care professional—that contributed to her misconduct, and evidence of good character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (d), (e), (f), and (g). We adopt these findings.

*Sanction Recommended by Parties and Board*

**{¶ 27}** The parties stipulated at the hearing, and both the panel and the board agree, that the appropriate sanction for Land's misconduct is that her license to practice law be indefinitely suspended, that she not be permitted to petition for reinstatement until she completes her federal probation, that she complete the conditions of her OLAP contract, and that she continue to receive treatment from a therapist until the therapist determines that it is no longer necessary.

*Similar Cases*

**{¶ 28}** The panel and board cite *Disciplinary Counsel v. Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166, as supporting a sanction of indefinite suspension here. We agree. In *Smith*, we imposed an indefinite suspension with credit for time served under an interim felony suspension on an attorney who had attempted to conceal his compensation by having his employer transfer money into two businesses he owned. He was convicted of conspiracy to

defraud the IRS, four counts of making false tax returns, and one count of corruptly endeavoring to obstruct and impede an IRS investigation. Reinstatement was conditioned on the completion of his federal supervised release and execution of a final agreement to pay restitution. The aggravating and mitigating factors were similar to those here.

{¶ 29} We also hold that *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, supports a sanction of an indefinite suspension in this case. In *Bennett,* the attorney was convicted of a felony for structuring financial transactions to avoid federal reporting requirements for transfers in excess of $10,000. The aggravating and mitigating factors in that case were similar to those here, and we indefinitely suspended the attorney but granted him credit for the time he had served under the interim suspension order.

## Conclusion

{¶ 30} Accordingly, Suzanne Prieur Land is indefinitely suspended from the practice of law in Ohio. Land may not petition for reinstatement until she has completed her federal probation. In addition, upon petitioning for reinstatement, Land must present proof that she either satisfactorily completed her OLAP contract or is in compliance with the conditions of her current OLAP contract and that she either continues to receive treatment from a therapist or that the therapist determined that treatment is no longer necessary. We credit Land for the time she has served under the September 6, 2012 interim suspension. Costs are taxed to Land.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in the judgment and the sanction but would not credit respondent with any time served under the interim suspension.

_____

Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., George D. Jonson, and Lisa M. Zaring, for respondent.

_____