**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Columbus Bar Assn. v. Striff,* **Slip Opinion No. 2019-Ohio-5285.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-5285

COLUMBUS BAR ASSOCIATION *v*. STRIFF.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Striff,* Slip Opinion No. 2019-Ohio-5285.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar, including knowingly making a false statement of fact to a tribunal, committing an illegal act that reflects adversely on the attorney's honesty or trustworthiness, and engaging in conduct that is prejudicial to the administration of justice—Indefinite suspension.*

(No. 2017-0770—Submitted May 21, 2019—Decided December 24, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-019.

————————————

**Per Curiam.**

{¶ 1} Respondent, Christopher William Striff Jr., of Delta, Ohio, Attorney Registration No. 0085421, was admitted to the practice of law in Ohio in November 2009.

{¶ 2} In a formal seven-count complaint certified to the Board of Professional Conduct on April 6, 2017, relator, Columbus Bar Association, alleged that Striff had committed multiple violations of the Rules of Professional Conduct and a violation of the Rules for the Government of the Bar. The allegations were related to his representation of five clients who sought bankruptcy protection, his fraudulent alteration of checks issued to him by bankruptcy trustees, and his failure to cooperate with the ensuing disciplinary investigation. Because Striff did not answer the complaint or respond to a show-cause order issued by this court, on July 7, 2017, we issued an interim default-suspension order pursuant to Gov.Bar R. V(14)(B). 150 Ohio St.3d 1293, 2017-Ohio-5736, 83 N.E.3d 933. Striff failed to file an affidavit of compliance as was required by the suspension order, and on August 25, 2017, we issued an order to show cause why he should not be found in contempt.

{¶ 3} On September 11, 2017, Striff's participation in the case began when, in response to the court's August show-cause order, he filed an affidavit of compliance. The affidavit indicated that Striff had closed his law practice as of April 1, 2016. He also supplied a new address to the board and the court.

{¶ 4} In December 2017, Striff submitted a motion for leave to file an answer instanter, which we granted on February 2, 2018, and we remanded the cause to the board for further proceedings, 151 Ohio St.3d 1516, 2018-Ohio-414, 90 N.E.3d 953.

{¶ 5} While the case was pending before the board, this court entered a second interim suspension order on August 28, 2018, based upon notification that Striff had been convicted of two counts of felony forgery (for altering checks from

2

bankruptcy trustees, as mentioned above) and one count of felony theft. 156 Ohio St.3d 1228, 2018-Ohio-3447, 125 N.E.3d 957. Relator filed an amended complaint on August 31, 2018, adding an additional count based on Striff's theft conviction and adding the new information regarding his forgery convictions for altering checks. Striff filed his answer to the amended complaint on September 5, 2018.

{¶ 6} The parties submitted written stipulations and numerous exhibits for the board's consideration. The stipulations set forth the facts relating to Striff's misconduct, the professional-conduct rules that were violated, the restitution owed to the named clients, the applicable aggravating and mitigating factors, Striff's history of substance abuse and treatment, the terms of Striff's contract with the Ohio Lawyers Assistance Program ("OLAP"), and a proposed sanction.

{¶ 7} A three-member panel of the board conducted a hearing on February 7, 2019, at which Striff and his parents testified. Based on the stipulations, the testimony, and the exhibits, the panel made findings of fact and agreed with the parties that Striff had committed the charged misconduct. After considering the relevant mitigating and aggravating factors, the panel recommended adoption of the parties' proposed sanction of an indefinite suspension.

{¶ 8} The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and no objections have been filed.

{¶ 9} We adopt the board's report and recommendation and indefinitely suspend Striff from the practice of law in Ohio.

**I. MISCONDUCT**

**A. Bankruptcy filings on behalf of Leah Davis, Eric Ebert, and Ebony Davis—Counts One through Three of the amended complaint**

{¶ 10} Counts One through Three of the amended complaint relate to Striff's representation of three separate clients: Leah Davis, Eric Ebert, and Ebony Davis. Striff filed Chapter 13 bankruptcy petitions on behalf of all three and, although Striff had received the full $310 Chapter 13 bankruptcy filing fee from

each client in advance, he petitioned the court to pay the filing fee in installments, but then failed to pay the installments to the court. The bankruptcy court dismissed Leah Davis's and Eric Ebert's cases for nonpayment of the fee. Ebert rehired Striff after the first dismissal and gave Striff an additional $310 to pay the filing fee for a new bankruptcy case. Although Striff did file the new case, he again petitioned for and received permission to pay the fee in installments, after which he again failed to pay the installment amounts. The result was that Ebert's second case was dismissed.

{¶ 11} In the third case (Ebony Davis's), the client paid the fee directly after receiving a delinquency notice, but the case was later dismissed for failure to prosecute, including failure to present a confirmable Chapter 13 bankruptcy plan.

{¶ 12} In all three cases, the clients ultimately hired new counsel, who filed new bankruptcy actions on their behalf. Leah Davis's new attorney reported Striff's actions to the bankruptcy court. The bankruptcy court issued an order requiring Striff to respond in writing and to appear for a hearing to explain why he should not be suspended from practicing before the bankruptcy court; Striff did not respond to the order and did not appear at the hearing. Ultimately, on October 6, 2016, the bankruptcy court suspended Striff from practicing before the court.

{¶ 13} The board found, with respect to the first three counts of the amended complaint, that Striff had violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board also agreed that Striff had violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation

under the rules of a tribunal) by failing to respond and appear as ordered by the bankruptcy court.

**B. Bankruptcy matters of Robert Calhoun and Ricardo Ismael Mendez—Counts Four and Five of the amended complaint**

{¶ 14} Counts Four and Five of the amended complaint relate to Striff's representation of two separate clients. Striff accepted fees to file bankruptcy petitions on behalf of Robert Calhoun and Ricardo Ismael Mendez—$1,000 plus the filing fee of $310 from Calhoun and $900 from Mendez—but then failed to file the petitions. With respect to these counts, the board found that Striff had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 8.4(b) and (c).

**C. Fraudulent checks—Count Six of the amended complaint**

{¶ 15} In certain Chapter 13 bankruptcy cases in which Striff represented the debtor, Striff was to be paid incrementally through monthly checks issued by the court-appointed trustee after the debtor made periodic payments to the trustee pursuant to the bankruptcy plan. In July 2016, Striff altered the amount payable on two such checks that he received from bankruptcy trustees. Specifically, Striff altered the amount payable from $304.87 to $1,304.87 on one check and from $6.56 to $2,344.44 on another and then cashed them at two check-cashing businesses. In each case, the bankruptcy trustee had used a "positive pay" system that disclosed the amount of each check to the trustee's bank at the time the check was issued. Consequently, the bank refused to honor the altered checks when the check-cashing companies presented them for payment.

{¶ 16} Striff also fabricated a trustee's check in the amount of $2,900.80, using the banking information from a legitimate trustee's check, and then attempted

to negotiate it. When the trustee was notified that Striff had tried to negotiate this "check," he contacted the police.

**{¶ 17}** As a result of police reports regarding the altered and fabricated checks, Striff was arrested on September 13, 2016. He ultimately pled guilty to two fifth-degree felony counts of forgery in violation of R.C. 2913.31. No fine was imposed, but Striff was ordered to make restitution to the check-cashing companies he had used: $2,344.44 to Check Smart and $1,304.87 to PLS Check Cashers. The court also imposed a five-year period of community control, which would terminate after one year if he made full restitution and committed no violations.

**{¶ 18}** With regard to this conduct, which forms the basis of Count Six of the amended complaint, the board found that Striff had violated Prof.Cond.R. 8.4(b), (c), and (d).

### D. Theft—Count Seven of the amended complaint

**{¶ 19}** On August 24, 2017, Striff was charged by the Franklin County prosecuting attorney with burglary and theft for allegedly stealing property valued at between $1,000 and $7,500 from an occupied structure. On August 6, 2018, Striff entered a guilty plea to the lesser included offense of theft, a third-degree felony. The court ordered Striff to make restitution to the victim in the amount of $1,938 and imposed a five-year period of community control, which could terminate after one year if Striff made full restitution and committed no further violations. Additionally, the court required Striff to submit to random drug screening and to obtain verifiable employment or take part in an employment program.

**{¶ 20}** With regard to this conduct, which forms the basis of Count Seven of the amended complaint, the board found that Striff had violated Prof.Cond.R. 8.4(b) and (c).

**E. Initial failure to cooperate with the disciplinary
investigation—Count Eight of the amended complaint**

{¶ 21} For each of the allegations of misconduct asserted in the first six counts of the amended complaint, relator made multiple requests to Striff for responsive information. Those efforts included delivering documents to alternative addresses where relator believed Striff lived or worked. Relator also sent requests for information to Striff via an e-mail address through which Striff had recently communicated with the bankruptcy trustees. Despite these efforts, Striff initially failed to contact relator, respond to the amended complaint, or furnish the requested information.

{¶ 22} On the other hand, after Striff filed his answer to the amended complaint, he cooperated in the proceedings.

{¶ 23} With regard to this conduct, which forms the basis of Count Eight of the amended complaint, the board found that Striff had violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(9)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

**F. Additional criminal misconduct**

{¶ 24} The parties stipulated and the board found that Striff pled guilty on May 17, 2018, to one misdemeanor count of a violation of 21 U.S.C. 844, simple possession of methamphetamine, after narcotics and paraphernalia were found in his Dublin, Ohio hotel room. The board found that Striff had violated Prof.Cond.R. 8.4(b) and (c) in connection with this misconduct, but because this misconduct was not charged in the amended complaint and because Striff did not stipulate to specific rule violations in connection with this misconduct, we decline to find rule violations in this case.

## II. SUBSTANCE ABUSE AND TREATMENT

{¶ 25} Striff testified at the hearing before the panel and explained that he began abusing alcohol in high school and that he drank even more heavily and more often while he was in college. During law school, Striff began to use Adderall, and after law school, when he could not get Adderall, he began using methamphetamine. Striff's hearing testimony and a letter from his substance-abuse counselor Dr. Don W. Jones indicate that Striff's addictions and substance-abuse issues contributed to cause his criminal acts and ethical violations. Striff began substance-abuse treatment in August 2017, and his doctors and counselors attest that he has made significant progress in terms of abstaining from drugs and alcohol, gaining insight into his behavior, and taking responsibility and experiencing remorse for his past transgressions.

{¶ 26} Additionally, Dr. Ermias Seleshi, a psychiatrist, opined that Striff has a long history of undiagnosed "recurrent mood and anxiety disturbance symptoms * * * consistent with bipolar and generalized anxiety disorders" that were "complicated by episodic substance abuse [that] appears to be in part a self-medicating effort." Dr. Seleshi further noted that Striff's psychiatric disorders "could have contributed to the infractions for which he is being sanctioned" and that the "prognosis for sustained control of his symptoms and stable functioning is good with ongoing treatment."

{¶ 27} On January 3, 2019, Striff entered into a four-year OLAP contract in which he agrees to, among other things, (1) continue to abstain from using any mood-altering substances, including alcohol, (2) accept monitoring by OLAP staff, (3) continue treatment at the Renewed Mind center, and (4) participate in the Alcoholics Anonymous 12-step program and attend at least three meetings a week. At the time of the panel hearing a month later, Striff was in compliance with that contract.

**III. RESTITUTION**

**{¶ 28}** The parties stipulated and the board found that Striff owes restitution to his former bankruptcy clients in the following amounts:

| | |
|---|---|
| Leah Davis | $310 |
| Eric Ebert | $620 |
| Ebony Davis | $620 |
| Robert A. Calhoun | $1,310 |
| Ricardo I. Mendez | $900 |

**IV. SANCTION**

**{¶ 29}** When imposing a sanction for attorney misconduct, we consider all the relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. The parties stipulated to and the board found the following aggravating factors:

- A dishonest or selfish motive, Gov.Bar R. V(13)(B)(2);

- A pattern of misconduct, Gov.Bar R. V(13)(B)(3); and

- The vulnerability of and resulting harm to victims of the misconduct, Gov.Bar R. V(13)(B)(8).

**{¶ 30}** The parties also stipulated to and the board found the following mitigating factors:

- Absence of a prior disciplinary record, Gov.Bar R. V(13)(C)(1);

- Full and free disclosure to the board, Gov.Bar R. V(13)(C)(4);

- The imposition of other penalties or sanctions, Gov.Bar R. V(13)(C)(6); and

- The existence of a disorder diagnosed by a qualified professional, along with (1) a determination that Striff's disorder contributed to cause his misconduct, (2) a sustained period of successful treatment, and (3) the prognosis from a qualified professional that Striff will be able to return to

competent, ethical professional practice under specified conditions. Gov.Bar R. V(13)(C)(7).

{¶ 31} The board also found Striff's genuine and sincere remorse to be a mitigating factor.

{¶ 32} The parties jointly asserted that the appropriate sanction for Striff's misconduct is an indefinite suspension from the practice of law. The panel agreed but added the qualification that he should receive no credit for the time he has served under his interim suspension and he should be ordered to pay restitution to his former clients. The panel recommended five conditions for Striff's reinstatement: (1) he remain compliant with his OLAP contract, (2) he remain in substance-abuse counseling and diligently follow all recommendations made by his counselors, (3) he commit no further misconduct, (4) he comply with the terms of his criminal probation, including payment of restitution of funds identified, and (5) he complete 12 hours of continuing legal education ("CLE") in law-office management, in addition to the requirements imposed upon a suspended attorney by Gov.Bar R. X. The board recommends that we impose the sanction recommended by the panel and that we order Striff to pay the costs of these proceedings.

{¶ 33} Given the severity of the violations to which Striff has stipulated, including criminal convictions, the overriding issue is whether the mitigating factors are sufficient to justify a lesser sanction than permanent disbarment.

{¶ 34} In *Cleveland Metro. Bar Assn. v. Toohig*, 133 Ohio St.3d 548, 2012-Ohio-5202, 979 N.E.2d 332, we permanently disbarred an attorney who had been convicted of felony income-tax evasion and had used his client trust account for personal purposes. *Toohig* involved many aggravating factors and the main mitigating factor was the absence of a prior disciplinary record. The court agreed with the board that little weight should be given to Toohig's evidence concerning

alcohol abuse because he had failed to establish that his alcohol abuse contributed to cause his misconduct.

{¶ 35} By contrast, in *Disciplinary Counsel v. Land*, 138 Ohio St.3d 357, 2014-Ohio-1162, 6 N.E.3d 1183, we indefinitely suspended a lawyer who had created and submitted fraudulent documents in three separate instances—one time submitting the fraudulent documents to a court and two times submitting them to the Internal Revenue Service. Land had also pled guilty to a federal information charging her with corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Code. As a result of that conviction, Land (1) was ordered to pay $75,000 in criminal penalties, (2) was sentenced to five years of probation, including three years of home detention, and (3) was ordered to abstain from using alcohol and to continue to receive mental-health treatment as deemed necessary by her probation officer. Prominent mitigating factors were her chemical dependency and mental disability, which were established through the testimony of a qualified health-care professional and which were determined to have contributed to her misconduct, and her cooperation in the disciplinary proceedings.

{¶ 36} Similarly, in *Disciplinary Counsel v. Peterson*, 135 Ohio St.3d 110, 2012-Ohio-5719, 984 N.E.2d 1035, we indefinitely suspended—rather than permanently disbarred—a lawyer who had, in addition to other misconduct, pled no contest to a fourth-degree felony for stealing $80,000 from a corporate client. Mitigating factors included a diagnosed mental disorder that may have contributed to the misconduct and that Peterson was taking active measures to alleviate that disorder.

{¶ 37} As the board noted, Striff's candid testimony and sincere remorse during the hearing also militate against permanent disbarment. *See Disciplinary Counsel v. Bandman*, 125 Ohio St.3d 503, 2010-Ohio-2115, 929 N.E.2d 442 (attorney misappropriated trust funds; indefinite suspension instead of disbarment

imposed given attorney's remorse, cooperation, and absence of disciplinary history); *Cincinnati Bar Assn. v. Britt*, 133 Ohio St.3d 217, 2012-Ohio-4541, 977 N.E.2d 620 (attorney took retainers and performed no work; indefinite suspension rather than disbarment imposed given attorney's absence of disciplinary history, his candor and cooperation, and his remorse); *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704 (attorney misappropriated client funds; indefinite suspension rather than permanent disbarment imposed given attorney's absence of disciplinary record, full and free disclosure to the board, positive character evidence, and genuine remorse).

## V. CONCLUSION

{¶ 38} For the foregoing reasons, we adopt the findings of fact, the conclusions of law (with the exception of the two rule violations mentioned in Section I(F) above), and the recommended sanction set forth in the board's report. Accordingly, we indefinitely suspend Striff from the practice of law with no credit for the time he has served under his interim suspension. Within 90 days of our disciplinary order, Striff shall make restitution (or reimburse the Lawyers' Fund for Client Protection, if the fund has already made payment to the individuals) of $310 to Leah Davis, $620 to Eric Ebert, $620 to Ebony Davis, $1,310 to Robert A. Calhoun, and $900 to Ricardo I. Mendez. In addition to the requirements set forth in Gov.Bar R. V(25), Striff's reinstatement shall be conditioned upon proof that he has (1) remained in compliance with his OLAP contract, (2) continued to participate in substance-abuse counseling and diligently followed all recommendations made by his counselors, (3) committed no further misconduct, (4) complied with the terms of his criminal probation, including restitution, and (5) completed 12 hours of CLE in law-office management, in addition to the requirements set forth in Gov.Bar R. X. Costs are taxed to Striff.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Luper, Neidenthal & Logan, L.P.A., and Amy L. Bostic; and Kent R. Markus, Bar Counsel, for relator.

Christopher William Striff Jr., pro se.

_____