**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Jacobs,* **Slip Opinion No. 2014-Ohio-2137.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2137

DISCIPLINARY COUNSEL *v*. JACOBS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Jacobs,* **Slip Opinion No. 2014-Ohio-2137.]**

*Attorneys—Misconduct—Felony conviction for filing false tax return—Two-year suspension with credit for time served under interim felony suspension.*

(No. 2013-1230—Submitted October 9, 2013—Decided May 27, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-074.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Leslie William Jacobs of Gates Mills, Ohio, Attorney Registration No. 0020387, was admitted to the practice of law in Ohio in 1968. On April 3, 2012, we suspended his license to practice law on an interim basis following his January 17, 2012 felony conviction for filing a false tax return. *In re Jacobs*, 131 Ohio St.3d 1495, 2012-Ohio-1485, 964 N.E.2d 436.

**{¶ 2}** On October 8, 2012, relator, disciplinary counsel, filed a complaint charging Jacobs with violations of the Code of Professional Responsibility and the Rules of Professional Conduct arising from the conduct that led to his felony conviction.[1] The parties submitted stipulations of fact and misconduct and a recommendation that Jacobs be suspended from the practice of law for two years with credit for time served under the interim suspension.

**{¶ 3}** A panel of the Board of Commissioners on Grievances and Discipline  conducted a hearing and adopted the parties' stipulations of fact and misconduct and agreed with the recommended sanction.  The board adopted the panel's report in its entirety, and no objections have been filed.

**{¶ 4}** We adopt the board's findings of fact and misconduct and conclude that a two-year suspension from the practice of law with credit for time served under the interim suspension is the appropriate sanction in this case.

### Misconduct

**{¶ 5}** For the tax years 2004 through 2007, Jacobs, a senior partner with a large law firm, prepared federal income tax returns for himself and his wife without the assistance of a professional tax preparer.  During 2004 and through 2007, he incurred substantial business expenses for which he received reimbursement from his firm, including travel expenses on client matters, costs of attending meetings and events for bar associations and other professional and civic organizations, seminar costs, and business entertainment expenses. Under his firm's procedures, he submitted detailed expense-reimbursement vouchers, supported by receipts, for items that he personally paid for, usually by charges to his personal credit card.  The firm then issued reimbursement checks payable to Jacobs that he deposited into his personal bank account.

---

[1] Relator charged Jacobs with misconduct under the applicable Disciplinary Rules for acts occurring before February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Disciplinary Rules of the Code of Professional Responsibility.

**{¶ 6}** Each year, Jacobs received an IRS Schedule K-1 from the law firm, which reported his ordinary business income from the firm and other items. On each of his income tax returns for 2004 through 2007, Jacobs included a Schedule E on which he reported his partnership income. On that form he also listed the amount of ordinary business income from his Schedule K-1 and subtracted an amount that he claimed as deductions for business expenses, resulting in a net amount of partnership income that he then reported on his tax return. Each year in that period, Jacobs knew that the amount that he claimed as business-expense deductions was inflated, which resulted in understating his income, which in turn falsely reduced his tax obligation.

**{¶ 7}** He falsely inflated his business-expense deductions in a number of ways. For the years 2004 through 2006, he inflated his deductions by reporting business expenses for which he had received reimbursement from the law firm and thus had no net out-of-pocket expense. He deducted such reimbursed expenses both for travel on client matters, for which the firm sought reimbursement from the clients, and for nonclient expenses borne by the law firm.

**{¶ 8}** Jacobs also claimed deductions for nondeductible dues for personal memberships at private clubs and charges for personal meals and other personal uses of the clubs. He deducted meal and entertainment expenses at 100 percent of the cost, even though he knew that those expenses, even when properly deducted, were deductible at only 50 percent of the cost.

**{¶ 9}** Jacobs leased one or two automobiles per year that he used to commute to his office and to drive for both business and personal purposes. He improperly deducted all those vehicle expenses even though he made personal and nondeductible use of the cars and also received reimbursement from his firm for the business miles he traveled.

**{¶ 10}** Jacobs testified that he engaged in this misconduct because of his frustrations with the federal government for falsely advising that his father died in

a plane crash in World War II and concealing the fact that he had been executed in a Japanese prisoner-of-war camp. He also was angry at the IRS for its alleged harassment of his mother—up to her death—about her failure to timely withdraw funds from her retirement account.

{¶ 11} In February 2008, an IRS revenue agent notified Jacobs and his wife that their 2005 income tax return was under audit. Jacobs met with the agent and an IRS supervisor later that month, provided the requested records, and was interviewed. Later in 2008, the revenue agent expanded the audit to include 2004. In July 2008, Jacobs met with the agent and a supervisor and provided the requested 2004 records and was interviewed about his 2005 taxes. Following that meeting, Jacobs faxed a written statement to the agent, discussing some of the issues addressed in that meeting. In July 2009, the IRS advised Jacobs that he was under a criminal investigation for his 2004 through 2007 income taxes, and a special agent and revenue agent interviewed him.

{¶ 12} During the two audit meetings, in the faxed letter, and during the criminal-investigation interview, Jacobs made false statements regarding the items for which he claimed inflated deductions. On November 2, 2011, Jacobs pled guilty to a federal information charging him with one count of making and subscribing false tax returns in violation of 26 U.S.C. 7206(1) for the years 2004 through 2007. In the false returns for those four years, Jacobs understated his taxable income by $256,380 and overstated his expenses by $253,256, resulting in unpaid taxes of $75,385. He paid this shortfall in full on January 17, 2012, the day he was sentenced.

{¶ 13} Jacobs was sentenced to serve 12 months and one day of incarceration and one year of supervised release, including four months minus one day of home confinement, and to pay a fine and special assessment totaling $10,100. He paid the special assessment of $100 on the day he was sentenced and the $10,000 fine on February 19, 2012. Jacobs completed his term of

4

imprisonment, less good-time credit, on January 17, 2013, his term of home confinement on May 16, 2013, and his supervised release on January 17, 2014.

{¶ 14} The parties stipulated, and the panel and board found, that Jacobs's conduct violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness); DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

### Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 16} The parties stipulated that four of the mitigating factors set forth in BCGD Proc.Reg. 10(B)(2) are present, namely, (a) the absence of a prior disciplinary record, (d) a cooperative attitude toward the proceedings, (e) good character and reputation, and (f) imposition of other sanctions and penalties. They also stipulated that Jacobs's misconduct was personal, that it was not committed in his capacity as a lawyer, and that it caused no harm to his clients.

{¶ 17} The panel and board also concluded that Jacobs had made a good-faith effort to provide restitution, BCGD Proc.Reg. 10(B)(2)(c), and that he had acknowledged the wrongful nature of his conduct. The panel and board found

two aggravating factors: a dishonest or selfish motive and a pattern of misconduct. BCGD Proc.Reg. 10(B)(1)(b) and (c).

{¶ 18} The parties cited several cases to support their recommendation of a two-year suspension retroactive to the date of Jacobs's suspension on April 3, 2012. The panel and board found *Disciplinary Counsel v. Pace*, 103 Ohio St.3d 445, 2004-Ohio-5465, 816 N.E.2d 1046, most persuasive.

{¶ 19} In *Pace*, the attorney was convicted of failing to disclose on his tax return that he had an interest in or authority over a financial account in a foreign country. Pace was sentenced to a two-month term at a federal minimum-security facility and one year of supervised release. Based upon his felony conviction, pursuant to Gov.Bar R. V(5)(A), we suspended Pace's license to practice law for an interim period. In his subsequent disciplinary action, the board found in mitigation that Pace had practiced law for more than 35 years, had no prior disciplinary record, and cooperated completely in the disciplinary process. The board did not find any aggravating factors. We held that he violated DR 1-102(A)(4) and (6), and we imposed a two-year suspension with credit for time served under his interim suspension.

{¶ 20} Another similar case is *Disciplinary Counsel v. Blaszak*, 104 Ohio St.3d 330, 2004-Ohio-6593, 819 N.E.2d 689, in which the attorney had offered to sell truthful testimony in a pending case in return for $500,000 and $5,000 a month for his continuing legal services. The government charged him with selling testimony after he accepted a $50,000 down payment. Upon his federal felony conviction, the court sentenced him to three years of supervised probation, fined him $5,000, and ordered him to complete 500 hours of community service. We imposed an interim felony suspension pursuant to Gov.Bar R. V(5)(A)(3) and subsequently found that his conduct violated DR 1-102(A)(4), (5) (prohibiting conduct prejudicial to the administration of justice), and (6).

**{¶ 21}** We imposed a lesser sanction than disbarment or indefinite suspension, noting the "overwhelming evidence of mitigation that respondent has presented here." *Id.* at ¶ 24. We acknowledged the significant number of reference letters that the attorney presented and emphasized "the extensive gratitude and appreciation these authors express[ed] for respondent's professional assistance in their lives and his achievements in the courts and community." *Id.* Based on "[t]hese testimonials, together with respondent's contrition, completion of his sentence, cooperation, the over two years his license has already been suspended, and his heretofore exemplary record of professional and community service," we determined that a two-year suspension from the practice of law, with credit for time served under the interim suspension, to be the appropriate sanction.

**{¶ 22}** In this case, we agree with the findings of the panel and the board. Jacob lacks a prior disciplinary record, cooperated in the proceedings, paid all taxes, acknowledged the wrongful nature of his conduct, and suffered the imposition of other sanctions and penalties, including a federal prison sentence, home confinement, supervised probation, and a $10,000 fine. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), and (d).

**{¶ 23}** Further, throughout his legal career, Jacobs has demonstrated his good character and reputation in both the legal community and the community at large through a significant number of character letters that speak to his professionalism and his contributions to the bar and to community organizations. *See* BCGD Proc.Reg. 10(B)(2)(e). He has served the legal community in capacities as the former president of the Ohio State Bar Association and as an officer and committee chairman of the American Bar Association, and it is apparent that he could further contribute if allowed to return to the practice of law.

**{¶ 24}** *Disciplinary Counsel v. Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166, is distinguishable on its facts. There, Smith concealed

approximately $250,000 in annual income from the IRS for several years, failing to report $1,411,265 in income to the IRS. And in response to an audit, he allowed his representative to present fraudulent documentation of expenses Smith had not incurred and to falsely state that Smith had no source of income other than that reported on his tax returns. A federal court convicted Smith of one count of conspiring to defraud the IRS, four counts of making false tax returns, and one count of corruptly endeavoring to obstruct and impede the ensuing IRS investigation, and it sentenced him to one year and one day in federal prison and a two-year period of supervised release. The court ordered restitution of $395,154 to the IRS; however, as of the panel hearing, Smith had only paid $2,000 in restitution. Based on our holding that Smith's conduct violated DR 1-102(A)(3), (4), (5), and (6), we indefinitely suspended him from the practice of law in Ohio, allowing him credit for time served under his interim suspension.

{¶ 25} In contrast to Smith, Jacobs has been convicted of one count of making false tax returns and did not seek to obstruct the IRS investigation. And unlike Smith, who still owed the IRS $393,154 in restitution as of the time of the panel hearing, Jacobs had paid the $75,385 owed in delinquent taxes before sentencing. Based on Jacob's conduct, a sanction is warranted in accord with our decisions in *Pace* and *Blaszak*.

{¶ 26} Accordingly, we accept the recommendation of the Board of Commissioners on Grievances and Discipline and in this case suspend Jacobs from the practice of law in Ohio for two years with credit for the time served under the interim suspension that began on April 3, 2012. Costs are taxed to Jacobs.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Schwartz, Downey & Co., L.P.A., Niki Z. Schwartz, and Brian P. Downey, for respondent.

_____