[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Marshall,* **Slip Opinion No. 2018-Ohio-4174.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4174

DISCIPLINARY COUNSEL *v.* MARSHALL.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Marshall,* Slip Opinion No. 2018-Ohio-4174.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Indefinite suspension with no credit for time served under interim default suspension.*

(No. 2018-0809—Submitted July 18, 2018—Decided October 16, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-042.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael J. Marshall, of Steubenville, Ohio, Attorney Registration No. 0065767, was admitted to the practice of law in Ohio in 1995.

{¶ 2} On August 22, 2017, we suspended Marshall's license to practice law on an interim basis after he pleaded guilty to one felony count of attempt and conspiracy to commit wire fraud in the United States District Court for the Northern

District of West Virginia. *In re Marshall*, ___ Ohio St.3d ___, 2017-Ohio-7296, ___ N.E.3d ___. In a complaint certified to the Board of Professional Conduct on September 13, 2017, relator, disciplinary counsel, charged Marshall with two ethical violations arising from his criminal conduct.

{¶ 3} Based on the parties' stipulations and evidence adduced at a hearing, a panel of the board issued a report finding that Marshall committed the charged misconduct and recommended that he be indefinitely suspended from the practice of law, with credit for time served under his interim felony suspension. The board adopted the panel's report in its entirety and no objections have been filed.

{¶ 4} Following our independent review of the record, we adopt the board's findings of misconduct and agree that an indefinite suspension is appropriate in this case. However, we decline to grant Marshall credit for the time that he served under the interim felony suspension.

**Misconduct**

{¶ 5} On June 2, 2015, a federal grand jury issued a 12-count indictment against Marshall, Brandt Stover, Stephen M. Powell, and Nichole Northcraft, alleging that they had conspired to defraud the federal government out of over $140 million in federal-agency contracts and payments. During the course of the conspiracy, Marshall and his three codefendants falsified information enabling four businesses to qualify for federal programs intended to assist small businesses owned and operated by socially and economically disadvantaged individuals or service-disabled veterans. The conspiracy was alleged to have occurred from February 2003 through October 2014.

{¶ 6} In May 2017, Marshall entered into a plea agreement by which he agreed to plead guilty to one count of attempt and conspiracy to commit wire fraud in violation of 18 U.S.C. 1343 and 1349, a Class C felony. At Marshall's change-of-plea hearing, Special Agent Jennifer Jezewski of the Defense Criminal

Investigative Service testified to the factual basis for the charge and resulting plea of guilty.

{¶ 7}  Jezewski testified that the Small Business Administration ("SBA") has a special program designed to assist disadvantaged entrepreneurs in obtaining contracts for government projects.  The Department of Veterans Affairs ("VA") has a similar program intended to assist disabled-veteran entrepreneurs.  Participation in each of the programs requires the applicant or participant to certify through an online system, at the time of the initial application and annually thereafter, that a disadvantaged entrepreneur or disabled-veteran entrepreneur is the primary owner and manager of the participating company and that the company is self-sufficient.  In the event that a veteran is severely disabled, however, the VA program requires the appointment of a designated caregiver as the veteran's representative to manage the company on the veteran's behalf.

{¶ 8}  Jezewski testified that the conspiracy charged in the indictment began in 2003.  At that time, Marshall and Stover became employees of Braun Enterprises, Inc., a company that participated in the SBA program for minority business owners.  The program required the company's president, Dave Patterson, to maintain at least 51 percent ownership and to be the primary manager of the company.  Federal investigators, however, determined that Patterson was a "paper president" who knew little about the company and did not oversee daily operations.  Stover actually ran the company.

{¶ 9}  In 2004, Marshall and Stover started another company called Rainbow Tech, Inc. ("RBT"), that was ostensibly owned and run by Terrence Rainbow—a cousin of codefendants Northcraft and Powell.  Although the company was accepted into the SBA program in May 2005, Jezewski testified that Rainbow had no control over the company or its bank account.  When RBT was initially formed, the company had had no money, employees, or equipment of its own and received financial support from N-Powell Company, Inc.—another company that

participated in the SBA program and that was owned by Northcraft, Stover, Marshall, and Powell.

{¶ 10} Marshall and Stover later started Braun Technology Solutions, which was purportedly owned by Robert Sizemore, a disabled veteran. Because Sizemore's disability prevented him from personally running the company, VA program regulations required that a caregiver be legally designated in writing to serve as his representative and run the company on his behalf. Although Marshall's former janitor was appointed by power of attorney to act on behalf of Sizemore in running Braun Technology Solutions, the former janitor was never designated as Sizemore's caregiver.

{¶ 11} Contrary to SBA and VA program requirements that participating companies be self-sufficient, Braun Enterprises, RBT, Braun Technology Solutions, and N-Powell shared field and office personnel, e-mail addresses, computer services, and an office in Weirton, West Virginia. Additionally, their bonding company treated all the businesses as a single company, which it referred to as "the Powell group," and required the companies to execute a cross-indemnification agreement.

{¶ 12} Testifying to the wiring aspect of the wire-fraud conspiracy, Jezewski stated that the initial certification and annual recertification of each participating business entity occurred through a web-based system and that the Powell group's computer server was initially located in Weirton, West Virginia. The companies submitted online invoices from the Weirton location and the Defense Financial Accounting Service wired payments from offices in Indianapolis, Indiana to N-Powell's bank in Columbus, Ohio.

{¶ 13} Following Jezewski's testimony, Marshall pleaded guilty to the charge of attempt and conspiracy to commit wire fraud in violation of 18 U.S.C. 1343 and 1349. Marshall's attorney confirmed that Marshall did not have a viable defense to that charge. The court accepted Marshall's guilty plea and subsequently

sentenced him to a three-year term of probation. Marshall consented to a personal-money judgment of $250,000 representing the proceeds that he received from the wire-fraud conspiracy. On January 30, 2018, the United States Attorney's Office informed the court that the money judgment had been paid in full.

{¶ 14} Based on the stipulations of the parties, the exhibits, and the testimony presented at the panel hearing, the board found that Marshall participated in a conspiracy to submit false information to the SBA and the VA in order to obtain funding that neither he nor his codefendants were qualified to receive. Therefore, the board found that Marshall violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from engaging in an illegal act that adversely reflects upon the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation). We agree with these findings.

**Sanction**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} As aggravating factors, the parties stipulated and the board agreed that Marshall engaged in a pattern of misconduct involving multiple offenses that spanned more than 11 years. *See* Gov.Bar R. V(13)(B)(3) and (4). The board also found that Marshall acted with a dishonest and selfish motive. *See* Gov.Bar R. V(13)(B)(2).

{¶ 17} Stipulated mitigating factors included Marshall's lack of a prior disciplinary record, his full and free disclosure and cooperative attitude toward the disciplinary proceedings, four letters attesting to his competence and good character, and that other penalties and sanctions have been imposed as a result of his felony conviction. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6). In addition

to those factors, the board found that Marshall made restitution by complying with the forfeiture order in his criminal case. *See* Gov.Bar R. V(13)(C)(3).

**{¶ 18}** The board recommended that we indefinitely suspend Marshall from the practice of law and that we credit him for the time that he has served under his interim felony suspension. In support of that sanction, the board cited three cases in which we imposed the identical sanction on attorneys convicted of comparable financial crimes that resulted in violations of Prof.Cond.R. 8.4(b) and (c) or corresponding provisions of the former Code of Professional Responsibility.[1]

**{¶ 19}** In *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, Bennett was convicted of structuring $32,000 in bank deposits over a five-day period to avoid federal reporting requirements for transfers in excess of $10,000. As part of his disciplinary proceeding, however, he admitted that he had structured a total of $124,300 in deposits over a five-month period. Although we found that Bennett had acted with a dishonest or selfish motive and engaged in a pattern of misconduct, relevant mitigating factors included a clean disciplinary record, a cooperative attitude toward the disciplinary proceedings, positive character evidence, and the imposition of other sanctions for his illegal conduct. *Id*. at ¶ 23- 25.

**{¶ 20}** The attorneys in *Mahoning Cty. Bar Assn. v. Wagner*, 137 Ohio St.3d 545, 2013-Ohio-5087, 1 N.E.3d 398, and *Mahoning Cty. Bar Assn. v. Helbley*, 141 Ohio St.3d 156, 2014-Ohio-5064, 22 N.E.3d 1078, were convicted of conspiracy to commit wire fraud as part of a mortgage-fraud scheme. In *Wagner*, an individual named Romero Minor would negotiate the purchase of real property at one price, would recruit straw buyers or investors to purchase those properties at

---

1. On February 1, 2007, the Rules of Professional Conduct superseded the Code of Professional Responsibility. Before that date, DR 1-102(A)(4) prohibited a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and DR 1-102(A)(6) prohibited a lawyer from engaging in conduct that adversely reflected on the lawyer's fitness to practice law.

a much higher price, and then keep the excess funds that were generated by the fraudulently inflated price. Wagner had been the title agent for seven of those transactions. In three of the seven transactions, Wagner did not know that the information provided by Minor had been false. But as Wagner continued to work with Minor, Wagner realized that the structure of the transactions was suspect. Nevertheless, Wagner did not question the accuracy of the information or report his suspicions.

{¶ 21} Minor enmeshed Helbley in a similar scheme when he solicited Helbley to serve as a title agent for 14 properties. Minor had obtained appraisal reports that falsely inflated the value of the properties and would receive fraudulent mortgage loans based on the false reports. Helbley prepared the necessary HUD-1 settlement statements for straw buyers to obtain loans to finance the purchase of the properties. Helbley was aware that the appraisals had been fraudulently inflated when he prepared the HUD-1 settlement statements in furtherance of the conspiracy.

{¶ 22} Wagner and Helbley both engaged in multiple acts of misconduct over specific periods of time—7 months, *Wagner* at ¶ 11, and 13 months, *Helbley* at ¶ 13. *See* Gov.Bar R. V(13)(B)(3) and (4). Wagner and Helbley also presented several mitigating factors to the board, including the absence of prior discipline, the absence of a selfish motive (given that they received no compensation beyond their regular title-agent fees), a cooperative attitude toward the disciplinary process, evidence of good character and reputation, and the imposition of other penalties or sanctions, *Wagner* at ¶ 12; *Helbley* at ¶ 13. *See* Gov.Bar R. V(13)(C)(1), (2), (4), (5), and (6).

{¶ 23} We agree that the nature of Marshall's underlying criminal offense and resulting misconduct is comparable to the conduct exhibited in *Bennett*, *Wagner*, and *Helbley* and that an indefinite suspension is the appropriate sanction in this case. Marshall's conduct is distinguishable from the conduct in *Wagner* and

*Helbley*, however, because Marshall acted with a dishonest and selfish motive. Moreover, the conduct in *Bennett*, *Wagner*, and *Helbley* occurred over relatively shorter periods of time—5 months in *Bennett*, 7 months in *Wagner*, and 13 months in *Helbley*—while Marshall engaged in a criminal conspiracy that spanned more than 11 years and arguably diverted more than $140 million in federal contracts away from other small businesses that actually qualified for the SBA and VA programs. On these facts, we decline to grant Marshall any credit for the time served under his interim felony suspension.

**{¶ 24}** Accordingly, Michael J. Marshall is indefinitely suspended from the practice of law in Ohio. He shall receive no credit for the time that he served under his interim felony suspension. Costs are taxed to Marshall.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., and Jonathan E. Coughlan, for respondent.

_____