**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Bereday,* **Slip Opinion No. 2019-Ohio-1895.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2019-Ohio-1895**

**DISCIPLINARY COUNSEL *v.* BEREDAY.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bereday,* Slip Opinion No. 2019-Ohio-1895.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Indefinite suspension.*

(No. 2018-1763—Submitted January 30, 2019—Decided May 22, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-017.

_____

**Per Curiam.**

{¶ 1} Respondent, Thaddeus Matthew Sigmund Bereday, of Tampa, Florida, Attorney Registration No. 0061991, was admitted to the practice of law in Ohio in 1993. On November 27, 2017, we suspended his license on an interim basis after receiving notice that a federal court had convicted him of a felony for

making a false statement involving a healthcare-benefit program. *See In re Bereday*, 152 Ohio St.3d 1204, 2017-Ohio-8676, 93 N.E.3d 986.

{¶ 2} In March 2018, relator, disciplinary counsel, charged Bereday with professional misconduct based on the facts that led to his felony conviction. Bereday stipulated to the charges against him, and the parties jointly recommended that he serve an indefinite suspension, with credit for the time he has served under his interim felony suspension. After a hearing, the Board of Professional Conduct issued a report finding that Bereday had engaged in the stipulated misconduct and recommending that we adopt the parties' proposed sanction. The board also recommended that we condition Bereday's future reinstatement on his successful completion of or discharge from a three-year term of supervised release imposed as part of his criminal sentence. None of the parties objected to the board's report.

{¶ 3} Upon our review of the record, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 4} At the time of his misconduct, Bereday was serving as general counsel and chief compliance officer for Wellcare Health Plans, Inc., which, according to the parties, was one of Florida's largest providers of managed healthcare services.

{¶ 5} In March 2011, Bereday and four codefendants—all executives or officers of Wellcare or its subsidiaries—were named in an 11-count indictment filed in the United States District Court for the Middle District of Florida. Bereday was charged with one count of conspiracy, four counts of making false statements relating to a healthcare benefit program, and four counts of healthcare fraud. In January 2012, the Securities and Exchange Commission ("SEC") filed a separate civil complaint against Bereday and two other Wellcare executives. The SEC alleged that the defendants had carried out a fraudulent scheme to deceive Florida healthcare agencies and investors by, among other things, improperly retaining

2

millions of dollars in healthcare premiums that should have been reimbursed to the state.

{¶ 6} The federal court later stayed the SEC action pending the conclusion of the criminal case. Bereday's criminal case was severed from his codefendants' and then delayed for various reasons, including Bereday's treatment for cancer.

{¶ 7} In June 2017, Bereday entered into a plea agreement in which he agreed to plead guilty to one count of making a false statement relating to a healthcare-benefit program in violation of 18 U.S.C. 1035(a)(2). In short, Bereday admitted that in April 2007, he knowingly and willfully caused one of Wellcare's subsidiaries to submit a false worksheet to the Florida agency administering the state's Medicaid program. Bereday agreed that as a result of the false financial information submitted on the worksheet, Florida's Medicaid program incurred a loss of $4,489,303. The federal court accepted his guilty plea to the offense, and in November 2017, it sentenced him to six months of incarceration in federal prison and to a three-year term of supervised release, including 12 months of home confinement. The court also imposed a $50,000 fine.

{¶ 8} Bereday thereafter consented to an entry of final judgment in the SEC action. As part of that judgment, Bereday agreed to an order enjoining him from acting as an officer or director of an issuer of securities for five years. He also agreed to pay $3.5 million in disgorgement and prejudgment interest and a $1 million civil penalty for violating securities laws. At the time of his disciplinary hearing, Bereday had served his six-month prison sentence and had paid the fines and penalties assessed against him in both the criminal and SEC actions.

{¶ 9} Based on this conduct, the parties stipulated and the board found that Bereday violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 10} We agree with the board's findings of misconduct.

## Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 12} As aggravating factors, the board found that Bereday had a dishonest and selfish motive and that he had engaged in multiple offenses, as shown by the separate criminal and civil judgments against him. *See* Gov.Bar R. V(13)(B)(2) and (4). The board also noted that his conduct had harmed Florida's Medicaid program, despite the fact that it was Bereday's duty, as Wellcare's chief compliance officer, to ensure that this type of fraud did not occur. *See* Gov.Bar R. V(13)(B)(8).

{¶ 13} In mitigation, the board determined that Bereday has a clean disciplinary record, he had paid $3.5 million in restitution for disgorgement of ill-gotten gains, he had provided full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings, and he has been subject to other criminal and civil sanctions for the same misconduct. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (6). The board also noted that Bereday had presented witness testimony and 16 letters of reference attesting to his character and reputation. *See* Gov.Bar R. V(13)(C)(5).

{¶ 14} To support its recommended sanction, the board cited a number of cases in which we indefinitely suspended attorneys convicted of similar fraudulent financial crimes. For example, in *Mahoning Cty. Bar Assn. v. Wagner*, 137 Ohio St.3d 545, 2013-Ohio-5087, 1 N.E.3d 398, and *Mahoning Cty. Bar Assn. v. Helbley*, 141 Ohio St.3d 156, 2014-Ohio-5064, 22 N.E.3d 1078, we indefinitely suspended attorneys convicted of conspiracy to commit wire fraud in a mortgage-fraud scheme. We also granted those attorneys credit for the time they had served under their interim felony suspensions imposed for the same misconduct. In *Disciplinary*

*Counsel v. Schuler*, 138 Ohio St.3d 346, 2014-Ohio-1127, 6 N.E.3d 1173, we indefinitely suspended an attorney, with credit for the time he had served under an interim felony suspension, who had been convicted of filing a false tax return. And in *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, we indefinitely suspended an attorney, with credit for the time he had served under an interim felony suspension, who had been convicted of illegally structuring financial transactions to evade federal currency-transaction reporting requirements.

{¶ 15} The board also noted that in two cases that are more recent, we declined to grant credit for the time served under interim felony suspensions. For example, in *Disciplinary Counsel v. Marshall*, 155 Ohio St.3d 208, 2018-Ohio-4174, 120 N.E.3d 772, we indefinitely suspended an attorney who had participated in a scheme in which a group of related businesses submitted false information to federal agencies to obtain funding that the businesses were not qualified to receive. The attorney was later convicted of attempt and conspiracy to commit wire fraud. We noted that although the nature of Marshall's underlying criminal offense was comparable to the misconduct in *Wagner*, *Helbley*, and *Bennett*, Marshall's actions were distinguishable, in part because he had engaged in a criminal conspiracy that spanned more than 11 years and arguably diverted more than $140 million in federal contracts away from other businesses that actually qualified for the money. In contrast, the misconduct in *Wagner*, *Helbley*, and *Bennett* occurred over relatively shorter periods of time—7 months in *Wagner*, 13 months in *Helbley*, and 5 months in *Bennett*. On that record, we declined to grant Marshall credit for the time he had served under his interim felony suspension. *Marshall* at ¶ 23.

{¶ 16} Here, the board found that although Bereday's criminal conduct involved a significant amount of money, it was centered on the submission of one false financial worksheet. Therefore, the board concluded that the span of

Bereday's misconduct was not as egregious as the 11-year course of fraudulent conduct in *Marshall*.

{¶ 17} We agree that an indefinite suspension is the appropriate sanction for Bereday's misconduct, and based on the facts of his case, we accept the board's recommendation to grant credit for the time he has served under his interim felony suspension. *See Disciplinary Counsel v. Doumbas*, 149 Ohio St.3d 628, 2017-Ohio-550, 76 N.E.3d 1185 (accepting the board's recommendation to indefinitely suspend an attorney convicted of bribery and to grant credit for the time he had served under his interim felony suspension because, among other reasons, his misconduct was a one-time violation and he had presented significant mitigating evidence). We also agree with the board's recommendation that Bereday be required to complete or be released from his three-year term of supervised release before petitioning for reinstatement. *See Bennett* at ¶ 28 (conditioning the attorney's reinstatement on his completion of his term of supervised release); *Cincinnati Bar Assn. v. Kellogg*, 126 Ohio St.3d 360, 2010-Ohio-3285, 933 N.E.2d 1085 (indefinitely suspending an attorney convicted of money laundering and other offenses and conditioning his reinstatement upon his completion of his term of supervised release).

**Conclusion**

{¶ 18} For the reasons explained above, Thaddeus Matthew Sigmund Bereday is indefinitely suspended from the practice of law in Ohio, with credit for the time he has served under the November 27, 2017 interim suspension. Notwithstanding Gov.Bar R. V(25)(D)(2), Bereday shall not petition for reinstatement until he has successfully completed or has been released from the term of supervised release imposed as part of his criminal sentence. Costs are taxed to Bereday.

Judgment accordingly.

FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

January Term, 2019

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur in part and dissent in part and would not give credit for time served.

_____

Scott J. Drexel, Disciplinary Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan Coughlan, for respondent.

_____