**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Disciplinary Counsel v. George*, **Slip Opinion No. 2020-Ohio-2902.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2902

DISCIPLINARY COUNSEL *v*. GEORGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. George*, Slip Opinion No. 2020-Ohio-2902.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Indefinite suspension.*

(No. 2019-1747—Submitted January 29, 2020—Decided May 13, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-031.

_____

**Per Curiam.**

{¶ 1} Respondent, Mark Minor George, of Independence, Ohio, Attorney Registration No. 0041021, was admitted to the practice of law in Ohio in 1988. We suspended George's license for less than one day in November 2015 for his failure to timely register for the 2015-2017 biennium. *See In re Attorney Registration Suspension of George*, 143 Ohio St.3d 1509, 2015-Ohio-4567, 39 N.E.3d 1277, *reinstatement granted*, 144 Ohio St.3d 1432, 2015-Ohio-5363, 42

N.E.3d 766.  On November 23, 2016, we suspended his license on an interim basis following his felony conviction for conspiracy to commit wire fraud and securities fraud, and that suspension remains in effect.  *See In re George*, 147 Ohio St.3d 1298, 2016-Ohio-7855, 68 N.E.3d 809.

{¶ 2} In a June 3, 2019 complaint, relator, disciplinary counsel, alleged that by engaging in the conduct underlying his criminal conviction, George violated ethical rules that prohibit a lawyer from (1) committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness, (2) engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and (3) engaging in conduct that adversely reflects on the lawyer's fitness to practice law. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors and jointly recommend that George be indefinitely suspended from the practice of law.  Based on those stipulations and the evidence presented at a hearing before a three-member panel of the Board of Professional Conduct, the board issued a report finding that George committed the charged misconduct and recommends that we indefinitely suspend him from the practice of law with no credit for the time he has served under his interim felony suspension.  No objections have been filed.

{¶ 3} We adopt the board's findings of misconduct and agree that an indefinite suspension with no credit for the time he has served under our 2016 interim-felony-suspension order is the appropriate sanction in this case.

**Misconduct**

{¶ 4} On June 24, 2015, a federal grand jury indicted George on eight counts of criminal conduct arising from his participation in a criminal scheme whereby a company, known as KGTA Petroleum, Ltd. ("KGTA"), solicited investors by representing that it would purchase various crude-oil and refined-fuel products at deeply discounted prices and would resell them at a substantial profit. *See United States v. Abdallah*, N.D.Ohio No. 1:15CR231.  Investors were

2

promised a guaranteed return of up to 5 percent a month and were told that KGTA would make no purchases without first having "presold" the products to bona fide purchasers at a substantial profit. George, who had previously represented one of KGTA's founders in real-estate matters and the purchase and sale of several small businesses, used his client trust account as a depository for investors' funds. KGTA promoted his status as an attorney and "escrow agent" to assure investors that their money would be safe. Their escrow agreements stated that all funds would be held in escrow by an attorney (George) and would be disbursed only after executed purchase orders were received from legitimate third-party buyers and that all proceeds from the sale of fuel or oil would be delivered directly to the escrow agent.

{¶ 5} KGTA was, in fact, a fraudulent scheme that bilked more than 70 investors out of more than $31 million over nearly four years. KGTA's principals never provided George with legitimate purchase orders, and no profits from the sale of fuel or oil were ever deposited into George's client trust account. It appears that the majority of the investors' funds were stolen by KGTA's principals.

{¶ 6} George was not a principal of KGTA and did not perform any legal services for the company or its investors, but his status as an attorney and his role as an escrow agent gave the appearance that the victims' investments in KGTA would be secure. At some point, George realized that KGTA was not a legitimate business—though at his disciplinary hearing, he could not, or would not, disclose when that epiphany had occurred. He testified that he left the company after observing improper conduct but that he returned on a month-to-month basis after the principals assured him that they would change their practices and increased his flat monthly fee—from approximately $2,500 to $4,000 a month.

{¶ 7} George pleaded guilty to a single count of conspiracy to commit wire fraud and securities fraud in violation of 18 U.S.C. 1349. In October 2016,

he was sentenced to 21 months in federal prison, followed by three years of supervised release, and ordered to pay restitution of more than $17 million, jointly and severally with his coconspirators. In a separate action filed by the Securities and Exchange Commission ("SEC"), George was permanently enjoined from committing further violations and was ordered to disgorge $125,940 and $20,634 in prejudgment interest, representing his profits from the conspiracy. *See United States v. Abdallah*, N.D.Ohio No. 1:14-cv-1155 (Aug. 2, 2018). In addition, the Lawyers' Fund for Client Protection has awarded a total of $51,000 to two of the victims of the conspiracy.

{¶ 8} At his September 26, 2019 disciplinary hearing before a panel of the board, George testified that he served approximately 16 months in prison and spent one year in a halfway house before being released to home detention in May 2019. He remained on supervised release and had paid approximately $6,700 toward his restitution obligation by the time of the hearing.

{¶ 9} The parties stipulated and the board found that George's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and that his conduct was sufficiently egregious to justify finding a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), *see Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We adopt these findings of misconduct.

## Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

4

{¶ 11} The parties stipulated that George had a prior attorney-registration suspension, had engaged in a pattern of misconduct, had committed multiple offenses, and had caused harm to vulnerable persons.[1] *See* Gov.Bar R. V(13)(B)(1), (3), (4), and (8). As for mitigating factors, the parties stipulated that George had exhibited a cooperative attitude toward the disciplinary proceedings, submitted evidence of his good character and reputation, and had other penalties or sanctions imposed for his misconduct. *See* Gov.Bar. R. V(13)(C)(4), (5), and (6).

{¶ 12} The board adopted the stipulated aggravating and mitigating factors with some elaboration. It noted that George was not a vigorous advocate on his own behalf but responded to relator's detailed complaint with a simple admission and asked that he "be allowed to recover from this case as the Court deems just and proper." The board described George's attitude throughout these proceedings as "one of profound regret for the harm suffered by the victims of the KGTA scam and sorrow for the shame he has brought to his family's name." It found that he had offered no excuses for his misconduct and was forthright in answering the questions posed by relator and the panel members. And the board noted that in his closing remarks, George had candidly stated, "I don't know if I should be allowed to practice law again because so many people got hurt."

{¶ 13} The board considered the character letters submitted on George's behalf by a diverse group of 26 people that included members of his church, practicing lawyers, business associates, former United States Congresswoman Mary Rose Oakar, former Cuyahoga Common Pleas Court Judge Jeff Hastings, and Independence City Council Member James P. Trakas. The board described the picture that emerged from these letters as that of a deeply religious Orthodox

---

1. Although the parties stipulated and the board found that George's registration suspension spanned seven weeks, he was reinstated at approximately 4:25 pm on the day that the suspension was imposed.

Christian man whose family was very prominent in the Lebanese community of greater Cleveland and who had placed great value on his family's name and expressed great shame at having failed to live up to it.

{¶ 14} The board also noted that George was dedicated to community service and had devoted a great deal of his time to programs aimed at aiding the poor and those in need. For example, George helped develop the "Adopt-A-Block" program in inner-city Cleveland, to encourage small groups of people to regularly visit a neighborhood of 20 families, bringing them food, clothing, school supplies, and other necessities. In addition to providing free legal services to the program, George adopted his own neighborhood and actively solicited donations to help meet its needs. When Adopt-A-Block volunteers discovered that children were sleeping on the floor, George arranged for the donation of 600 beds. He also supported the Greater Cleveland Fisher House campaign, which offers free lodging to military families while their loved ones receive medical treatment.

{¶ 15} The parties jointly recommend that George be indefinitely suspended from the practice of law. George did not oppose relator's request that George receive no credit for the time he has served under his interim felony suspension. In support of their proposed sanction, the parties noted that we have often imposed indefinite suspensions on attorneys convicted of crimes involving fraudulent financial transactions. *See, e.g.*, *Disciplinary Counsel v. Bereday*, 157 Ohio St.3d 8, 2019-Ohio-1895, 131 N.E.3d 9 (indefinitely suspending an attorney convicted of knowingly making a false statement involving a healthcare-benefit program that caused Florida's Medicaid program to lose nearly $4.5 million); *Mahoning Cty. Bar Assn. v. Wagner*, 137 Ohio St.3d 545, 2013-Ohio-5087, 1 N.E.3d 398 (indefinitely suspending an attorney convicted of conspiracy to commit wire fraud in a mortgage-fraud scheme); *Mahoning Cty. Bar Assn. v. Helbley*, 141 Ohio St.3d 156, 2014-Ohio-5064, 22 N.E.3d 1078 (same). However, the parties acknowledged that the facts of this case are most

comparable to those of *Disciplinary Counsel v. Ulinski*, 106 Ohio St.3d 53, 2005-Ohio-3673, 831 N.E.2d 425—a case in which we permanently disbarred an attorney convicted of conspiracy to commit securities fraud, mail fraud, and wire fraud as a result of his participation in a Ponzi scheme that caused investors to lose approximately $41 million.

{¶ 16} Like George, Ulinski served as an escrow agent in a criminal conspiracy, depositing investors' funds into his client trust account and creating the false impression that he was acting as a fiduciary to protect the investors' interests. *See id.* at ¶ 10. But Ulinski also assisted with estate-planning seminars to attract potential investors and provided legal advice to some of the seminar attendees, enabling him to learn about their assets before his coconspirators solicited their investments in the fraudulent scheme. *Id.* at ¶ 6. Moreover, he drafted false and fraudulent legal documents for his coconspirators to provide to their investors. *Id.* at ¶ 11. Ulinski was sentenced to two years of probation, followed by six months of house arrest, and ordered to pay $137,511.50 in restitution for his role in the conspiracy. *Id.* at ¶ 3. Citing the devastating effects of the conspiracy and the overwhelming number of injured investors—which included approximately 100 of Ulinski's own clients—we rejected the board's recommended sanction of an indefinite suspension and permanently disbarred Ulinski from the practice of law in Ohio. *Id.* at ¶ 18, 23-24.

{¶ 17} Although the board acknowledged the similarities between George's and Ulinski's misconduct, it found that several distinguishing factors warranted the imposition of a lesser sanction in this case. Specifically, the board noted that George had played no part in identifying investors for KGTA, had no hand in preparing the documents used in furtherance of the conspiracy, and received only a flat monthly fee for his role as the escrow agent. Despite having played a more limited role in the conspiracy, George received a much harsher criminal sentence than Ulinski received.

{¶ 18} Having considered George's misconduct, the relevant aggravating and mitigating factors, and the facts of *Ulinski*, the board adopted the parties' recommendation that George be indefinitely suspended from the practice of law with no credit for the time he has served under his interim felony suspension. The board also recommends that upon reinstatement, in addition to the requirements set forth in Gov.Bar R. V(25), George be required to demonstrate that he has (1) complied with the terms of his supervised release, (2) completed a minimum of three hours of continuing legal education ("CLE") regarding the establishment and maintenance of a client trust account, in addition to the requirements of Gov.Bar R. X, (3) made full restitution to the Lawyers' Fund for Client Protection, and (4) taken reasonable steps to comply with the orders of restitution imposed in connection with his criminal and SEC proceedings.

{¶ 19} After independently reviewing the record, we agree that the facts of this case are distinguishable from those of *Ulinski* for the reasons stated above. In light of George's candor throughout his criminal prosecution and these disciplinary proceedings, his genuine remorse for the role he played in the underlying conspiracy, and the significant evidence of his good character and reputation and of his extensive community involvement, we agree that an indefinite suspension, with no credit for the time he has served under his interim felony suspension, is the appropriate sanction for George's misconduct.

{¶ 20} Accordingly, Mark Minor George is indefinitely suspended from the practice of law in Ohio, with no credit for the time he has served under the interim felony suspension imposed on November 23, 2016. Upon reinstatement, in addition to the conditions set forth in Gov.Bar R. V(25), George shall be required to demonstrate that he has (1) complied with the terms of the supervised release imposed by the United States District Court for the Northern District of Ohio in case No. 1:15CR231, (2) completed a minimum of three hours of CLE regarding the establishment and maintenance of a client trust account, in addition

to the requirements of Gov.Bar R. X, (3) made full restitution to the Lawyers' Fund for Client Protection, and (4) taken reasonable steps to comply with the orders of restitution imposed in connection with *United States v. Abdallah*, N.D.Ohio No. 1:15CR231-002 (Oct. 28, 2016), and *United States v. Abdallah*, N.D.Ohio No. 1:14-cv-1155 (Aug. 2, 2018). Costs are taxed to George.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Mark Minor George, pro se.

_____