**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Fitz***, Slip Opinion No. 2022-Ohio-3108.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3108

DISCIPLINARY COUNSEL *v.* FITZ.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Fitz*, Slip Opinion No. 2022-Ohio-3108.]**

*Attorneys—Misconduct—Attorney violated the Rules of Professional Conduct, including Prof.Cond.R. 8.4(b) (prohibiting an attorney from committing an illegal act that reflects adversely on the attorney's honesty or trustworthiness) and 8.4(c) (prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation)—Two-year suspension imposed, with no credit for time served under interim felony suspension—Reinstatement conditioned on attorney's providing proof of his substantial, continuing efforts to pay restitution ordered as part of his criminal sentence.*

(No. 2022-0363—Submitted May 24, 2022—Decided September 8, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-046.

**Per Curiam.**

{¶ 1} Respondent, Robert Edward Fitz, of Westlake, Ohio, Attorney Registration No. 0024277, was admitted to the practice of law in Ohio in 1972. On December 20, 2019, we suspended Fitz's license on an interim basis after receiving notice that he had been convicted of workers' compensation fraud in violation of R.C. 2913.48(A)(7), a fourth-degree felony. *See In re Fitz*, 158 Ohio St.3d 1260, 2019-Ohio-5265, 145 N.E.3d 331.

{¶ 2} In August 2020, relator, disciplinary counsel, charged Fitz with violating the Rules of Professional Conduct based on the facts that led to his felony conviction. The disciplinary matter was stayed until the completion of Fitz's criminal appeal, which was resolved in late 2021. In February 2022, the parties entered into a comprehensive set of stipulations in which Fitz admitted to the charged misconduct. The parties, however, could not agree on a recommended sanction.

{¶ 3} After a hearing before a three-member panel of the Board of Professional Conduct, the board issued a report finding that Fitz had engaged in the stipulated misconduct and recommending that we suspend his license for two years, with no credit for the time he has served under his interim felony suspension. The board also recommends that we condition Fitz's future reinstatement on his submission of proof that he has made substantial and continuing efforts to pay the restitution ordered in his criminal sentence. Neither party has objected to the board's report. Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

## Misconduct

{¶ 4} Since 1991, Fitz has applied for and obtained workers' compensation policies from the Ohio Bureau of Workers' Compensation (hereinafter, "the bureau") for 12 housecleaning businesses, many of which operated under similar

names.    This matter involves his failure to pay premiums for workers' compensation coverage—and his related felony conviction—despite several opportunities for him to bring his policies into compliance.

*Fitz's prior contacts with bureau investigators*

{¶ 5} In 1996, Fitz obtained a workers' compensation policy for RCF Licensing, Inc., but stopped paying the policy's premium in September 2003. Around December 2006, agents from the bureau's special-investigations division advised Fitz that it was illegal to operate a business without appropriate workers' compensation coverage.  In response, Fitz said that the policy had lapsed and that he was trying to reinstate it.

{¶ 6} Around September 2013, the bureau consolidated all of Fitz's workers' compensation policies into one, policy No. 1185201-0.  The bureau also discovered that Fitz's various policies either had lapsed or had been canceled.  After an investigation, the bureau provided Fitz with the balance due for policy No. 1185201-0 and with payment-plan options.  Fitz, however, did not bring his policy into compliance.

{¶ 7} In March 2017, Fitz was charged in the Franklin County Court of Common Pleas with workers' compensation fraud, forgery, and failure to comply. Fitz entered a no-contest plea to the failure-to-comply charge, a second-degree misdemeanor, and the court entered a nolle prosequi as to the remaining counts. The court imposed a 30-day suspended jail sentence and ordered Fitz to pay $2,000 in restitution and the court costs.

*Fitz's felony conviction*

{¶ 8} In November 2018, the bureau investigated Fitz again—this time based on his failure to maintain workers' compensation coverage for AM Team, Inc., another one of Fitz's housecleaning businesses.

{¶ 9} In June 2019, Fitz was charged in the Cuyahoga County Court of Common Pleas with three counts of workers' compensation fraud under R.C.

2913.48(A)(7), a fourth-degree felony. Each count alleged that Fitz had committed the offense during separate payroll periods between 2017 and 2019. In September 2019, Fitz entered a guilty plea to Count 1, which alleged that he had failed to secure or maintain workers' compensation coverage from March 17 to June 30, 2017. The state dismissed the other two counts.

{¶ 10} Fitz stipulated in this disciplinary case that the following facts from the bureau's investigation supported his guilty plea. Fitz was the president and sole operator of AM Team, Inc. In December 2018, bureau agents provided him with his workers' compensation policy balance, two payroll "true-up reports," and instructions for a reinstatement payment plan.[1] Fitz returned the true-up reports but failed to pay any money toward reinstating his policy, although he had employees who made workers' compensation claims in 2017 and 2018. The bureau calculated that Fitz owed a balance of $936,344 on policy No. 1185201-0.

{¶ 11} The court sentenced Fitz to five years of community control and ordered him to pay $965,235 in restitution through a payment plan established by the court's probation department. Fitz appealed the restitution amount, but the court of appeals affirmed the trial court's judgment. Between December 2019 and February 2022 when the parties entered into their stipulations, Fitz paid $250 each month toward the restitution order.[2] As of February 2022, he still owed $958,485.

{¶ 12} Based on this conduct, the parties stipulated and the board found that Fitz violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c)

---

1. According to the parties' stipulations, because an employer's workers' compensation premium is based on the amount of payroll, the bureau requires employers to file true-up reports at the end of each policy year. The reports contain the employer's actual payroll for the previous year. This information assists the bureau in determining whether the previous year's premiums were correct and in estimating an appropriate premium for the following year.

2. The parties stipulated that in October 2015, Fitz also paid $650 toward his policy balance.

(prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We agree with the board's findings of misconduct.

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} As aggravating factors, the board found that Fitz had a dishonest or selfish motive and that he had engaged in a pattern of misconduct. *See* Gov.Bar R. V(13)(B)(2) and (3). As for mitigation, the board found that Fitz has a clean disciplinary record, has made an effort toward paying restitution, made full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings, and had other sanctions imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (6).

{¶ 15} In fashioning a recommended sanction, the board reviewed cases involving attorneys who had failed to remit payroll taxes on behalf of their employees and cases involving attorneys who had violated both Prof.Cond.R. 8.4(b) and 8.4(c). Relator argued that Fitz should be indefinitely suspended but given credit for the time he has served under his December 2019 interim suspension. In support, relator cited several cases, including *Disciplinary Counsel v. Bereday*, 157 Ohio St.3d 8, 2019-Ohio-1895, 131 N.E.3d 9; *Disciplinary Counsel v. Marshall*, 155 Ohio St.3d 208, 2018-Ohio-4174, 120 N.E.3d 772; and *Disciplinary Counsel v. Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166.

{¶ 16} In *Bereday*, the attorney, while serving as the general counsel and chief compliance officer for one of Florida's largest providers of managed-care services, caused one of the provider's subsidiaries to submit a false worksheet to the Florida agency administering the state's Medicaid program. As a result of the

false financial information, the Medicaid program incurred a loss of $4,489,303. Bereday was convicted in federal court of knowingly making a false statement involving a healthcare-benefit program. We indefinitely suspended him but granted him credit for the time he had served under his interim felony suspension. *Id.* at ¶ 4, 7, 18.

{¶ 17} In *Marshall*, the attorney participated in an 11-year scheme in which a group of related businesses submitted false information to federal agencies to obtain funding that the businesses were not qualified to receive. The conspiracy arguably diverted more than $140 million in federal contracts away from other businesses that could have qualified for the money. Marshall was convicted in federal court of attempt and conspiracy to commit wire fraud. We imposed an indefinite suspension, with no credit for the time he had served under his interim felony suspension. *Id.* at ¶ 5-14, 23-24.

{¶ 18} In *Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166, the attorney failed to report $1,411,265 in income over several years and allowed his agent to falsely state in an audit that he had no source of income other than that reported on his tax return. Smith was convicted of conspiracy to defraud the Internal Revenue Service ("IRS"), making false tax returns, and corruptly endeavoring to obstruct and impede an IRS investigation. We indefinitely suspended him but granted him credit for the time he had served under his interim suspension. *Id.* at ¶ 6-10, 16.

{¶ 19} The board found these cases instructive but also distinguishable from the facts in this case. For example, the board concluded that Bereday's misconduct—scheming to defraud almost $4.5 million from the Florida Medicaid program—was more serious than Fitz's and that *Bereday* included an additional aggravating factor. The board similarly emphasized that Marshall diverted $140 million in federal contracts away from other businesses and that Smith failed to report over $1.4 million in income and was convicted of multiple federal felonies.

**{¶ 20}** In contrast to relator, Fitz argued that he should be suspended for two years, with credit for the time he has served under his interim suspension. He cited several cases imposing that sanction, including *Disciplinary Counsel v. Atway*, 160 Ohio St.3d 86, 2020-Ohio-2794, 153 N.E.3d 79; *Disciplinary Counsel v. Lawrence*, 147 Ohio St.3d 315, 2016-Ohio-4605, 65 N.E.3d 711; and *Disciplinary Counsel v. Jacobs*, 140 Ohio St.3d 2, 2014-Ohio-2137, 14 N.E.3d 984.

**{¶ 21}** *Atway* involved an attorney who failed to accurately report income for three tax years for a business that he owned, made false statements to his tax preparer, and failed to file a return for one year. His misconduct resulted in a loss of between $250,000 and $1,500,000 in federal income-tax revenue. He was convicted of filing a false federal tax return and ordered to pay $600,000 in restitution. *Id.* at ¶ 4-7. *Lawrence* involved an attorney who underreported income from various businesses—some of which were tangentially related to his practice of law—for three tax years. He was convicted of three counts of filing a false tax return and ordered to pay $128,253 in restitution. *Id.* at ¶ 2-9. *Jacobs* involved an attorney who understated his income and overstated his expenses for four tax years, resulting in unpaid taxes of $75,385. He was convicted of one count of making and subscribing false tax returns. *Id.* at ¶ 7-13.

**{¶ 22}** In comparing the facts in those cases to the circumstances here, the board noted that both Atway and Lawrence were sentenced to federal prison; indeed, Lawrence was sentenced to 27 months of incarceration for multiple federal offenses. In contrast, Fitz was sentenced to five years of community control for one fourth-degree felony. But Atway's and Lawrence's restitution orders, the board noted, involved amounts less than Fitz's. The board concluded that Jacobs's misconduct was "more in line with" Fitz's, at least compared to the indefinite-suspension cases cited by relator. But Jacobs's misconduct occurred over a much shorter period than Fitz's, and Jacobs had unpaid taxes of only $75,385.

**{¶ 23}** In the end, the board recommended a sanction that fell between the two sanctions proposed by the parties. The board concluded that considering the amount of loss suffered by the bureau, the relatively small amount that Fitz has since repaid, and the fact that Fitz engaged in the misconduct for almost 13 years, he should be suspended for two years, with no credit for the time he has served under his December 2019 interim suspension. The board also recommended that as a condition of reinstatement, Fitz be required to provide proof of substantial, continuing efforts to pay the restitution ordered as part of his criminal sentence.

**{¶ 24}** Having considered Fitz's misconduct, the relevant aggravating and mitigating factors, and our applicable precedent, we agree with the board's recommended sanction.

### Conclusion

**{¶ 25}** Robert Edward Fitz is hereby suspended from the practice of law in the state of Ohio for two years, with no credit for the time he has served under his interim felony suspension imposed on December 20, 2019. In addition to meeting the requirements of Gov.Bar R. V(24), Fitz's reinstatement shall be conditioned on his providing proof of his substantial, continuing efforts to pay the restitution ordered as part of his criminal sentence. Costs are taxed to Fitz.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Kelli C. Schmidt, Assistant Disciplinary Counsel, for relator.

Robert Edward Fitz, pro se.

_____